**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

SMOKING EVERYWHERE, INC.
5600 NW 102nd Avenue, Suite A
Sunrise, Florida 33351

Plaintiff,

and

Sottera, Inc., d/b/a/ NJOY
15455 N. Greenway-Hayden Loop Road
Scottsdale, Arizona 85260

Proposed Intervenor-Plaintiff,

vs.

U.S. FOOD AND DRUG ADMINISTRATION,
JOSHUA M. SHARFSTEIN, M.D.,
Acting Commissioner for Food and Drugs,
10903 New Hampshire Avenue
Silver Spring, Maryland 20903

and

U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES,
KATHLEEN SEBELIUS, Secretary of the Department of Health and Human Services
200 Independence Avenue, SW
Washington, D.C. 20201

Defendants.

Civil Action No. 1:09-cv-00771 (RJL)

**EXPEDITED MOTION OF SOTTERA, INC., d/b/a/ NJOY,
TO INTERVENE AS PLAINTIFF AND REQUEST FOR HEARING**

For the reasons set forth in the accompanying Memorandum of Points and Authorities and Verified Complaint, Sottera, Inc. d/b/a/ NJOY™ ("NJOY") respectfully moves on an expedited basis to intervene *as of right* as a plaintiff in the above-captioned matter pursuant to Fed. R. Civ. P. 24(a)(2). Alternatively, NJOY seeks *permissive intervention* pursuant to Fed. R.

Civ. P. 24(b)(1)(B). NJOY further requests that this motion be heard at 4 p.m. on Friday, May 15, in connection with the currently scheduled motion hearing on plaintiff Smoking Everywhere, Inc.'s ("SE") pending Motion for Temporary Restraining Order and/or Injunctive Relief. As set forth in the attached memorandum, NJOY is a competitor of plaintiff SE in the manufacture and distribution of electronic smoking devices ("E-cigarettes") that are the subject of this case. NJOY supports SE's motion and anticipates that an order on that motion could have a direct and immediate effect on its business.

Counsel for NJOY has consulted with counsel for SE, who has no objection to this motion so long as it does not alter the Court's current schedule for briefing and hearing on May 15. NJOY ***does not*** seek to alter that schedule, and indeed seeks through separate motion to join in SE's motion set for hearing on that date.

Counsel for NJOY has also consulted pursuant to Local Rule 7(m) with counsel for defendants, who indicated that they would take a position on whether they will oppose this Motion after they read the Motion and supporting documents.

Dated: May 8, 2009

Respectfully submitted,

LATHAM & WATKINS LLP

By: /s/ [signature]

David A. Becker (D.C. Bar No. 456396)
Philip J. Perry (D.C. Bar No. 434278)
John R. Manthei (D.C. Bar No. 447123)
*Pro hac vice* motion pending
Carolyne R. Hathaway (D.C. Bar No. 416066)
*Pro hac vice* motion pending
LATHAM & WATKINS LLP
555 11th Street, N.W. Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
E-mail: david.becker@lw.com

*Attorneys of Record for Proposed Intervenor-Plaintiff Sottera, Inc. d/b/a NJOY*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

SMOKING EVERYWHERE, INC.
5600 NW 102nd Avenue, Suite A
Sunrise, Florida 33351

Plaintiff,

and

Sottera, Inc., d/b/a/ NJOY
15455 N. Greenway-Hayden Loop Road
Scottsdale, Arizona 85260

Proposed Intervenor-Plaintiff,

vs.

U.S. FOOD AND DRUG ADMINISTRATION,
JOSHUA M. SHARFSTEIN, M.D.,
Acting Commissioner for Food and Drugs,
10903 New Hampshire Avenue
Silver Spring, Maryland 20903

and

U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES,
KATHLEEN SEBELIUS, Secretary of the Department of Health and Human Services
200 Independence Avenue, SW
Washington, D.C. 20201

Defendants.

Civil Action No. 1:09-cv-00771 (RJL)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SOTTERA, INC., D/B/A/ NJOY'S EXPEDITED MOTION TO INTERVENE AS PLAINTIFF**

**INTRODUCTION**

Proposed Intervenor-Plaintiff Sottera, Inc., d/b/a/ NJOY™, ("NJOY" or the "Company") is an importer and distributor of "E-cigarettes," an electronic product that allows consumers to inhale a nicotine vapor distilled from natural tobacco plants in a manner that simulates the experience of smoking traditional cigarettes. NJOY's E-cigarettes are marketed, labeled, and sold for adult use as an alternative to conventional cigarettes for "smoking pleasure" – and not as a therapeutic product.

Until recently, the U.S. Food and Drug Administration ("FDA") had not attempted to regulate NJOY's E-cigarettes. It has neither promulgated rules nor issued any official guidance indicating any intention to assert jurisdiction over E-cigarettes.[1] Indeed, prior to 2009, despite multiple inquiries by suppliers of E-cigarettes, FDA gave no indication that it believed it could assert regulatory jurisdiction over E-cigarettes following the U.S. Supreme Court's holding in *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 160-61 (2000) (holding that "it is plain that Congress has not given the FDA the authority" to regulate tobacco products).

In the past three years, NJOY has invested millions of dollars in bringing its product to market in the United States, and has entered into binding contracts with suppliers and distributors for the purchase and sale of E-cigarettes and developed a substantial customer base. NJOY has now imported and sold these products in the United States for multiple years without any indication that FDA intended to assert jurisdiction to regulate the product.

This all changed without warning in April 2009. On April 15, 2009, FDA detained a shipment of NJOY's E-cigarettes at the Phoenix, Arizona port of entry. At approximately the

---

1 FDA recently advised members of Congress that it intended to hold a press conference on May 5, 2009, to make a significant policy pronouncement regarding E-cigarettes. Without explanation, that press conference never took place, and has not been rescheduled.

same time, FDA added E-cigarettes and their components to an FDA "Import Alert" authorizing customs officials to detain them as "unapproved new drugs," asserting that E-cigarettes are subject to FDA jurisdiction under the Federal Food Drug and Cosmetic Act (FDCA). It is NJOY's understanding that FDA intends to detain future shipments of E-cigarettes, threatening to halt NJOY's business entirely and causing immediate severe irreparable harm to the company. Through its attorneys, NJOY has made (and continues to make) multiple efforts to address this issue with FDA. FDA has not informed NJOY when it will decide whether to remove the import restrictions on NJOY's products – although FDA's recent actions indicate that the agency has already made a final determination that it has jurisdiction over E-cigarettes.

This case has been brought by Smoking Everywhere, Inc. ("SE"), another E-cigarette manufacturer and a competitor of NJOY, whose products have similarly been detained at the port of entry pursuant to FDA's new policy. SE seeks immediate injunctive and declaratory relief to establish that FDA's detention of its products exceeds FDA's regulatory authority, and violates the Administrative Procedures Act's rulemaking requirements.

NJOY is aware that the Court has set a rapid schedule for resolution of SE's motion for preliminary injunction in this matter, with briefing to be completed by May 14, 2009 and a hearing the following day. NJOY shares SE's sense of urgency. Accordingly, in addition to seeking intervention, NJOY seeks to join in SE's preliminary injunction motion and adopt SE's memorandum in support thereof, as set forth in the motion for preliminary injunction filed herewith. NJOY ***does not*** seek to alter the current schedule for briefing and hearing.

Intervention as of right under Fed. R. Civ. P. 24(a)(2) is appropriate here because FDA's improper assertion of regulatory jurisdiction over E-cigarettes, which is at the heart of SE's claims in this action, directly threatens NJOY's business. The D.C. Circuit and this Court have

made plain that parties with standing to participate in the action are entitled to intervene as of right under Fed. R. Civ. P. 24(a) in actions that directly affect their economic interests. *See, e.g.*, *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 733-34 (D.C. Cir. 2003).

Alternatively, NJOY should be granted permissive intervention because NJOY "has a claim … that shares with the main action a common question of law …." Fed. R. Civ. P. 24(b)(1)(B). Namely, NJOY's claim that FDA's policy and actions with respect to E-cigarettes exceed its regulatory authority, violate the APA rulemaking requirements, and share a common legal and factual nexus with those brought by SE.

## BACKGROUND

This case is about FDA's authority to regulate E-cigarettes and its detention of those products under the recently revised "Import Alert." NJOY seeks to intervene in this action to protect its interests in marketing and selling its E-cigarettes in the United States. As set forth in SE's Complaint and Motion for Temporary Restraining Order and/or Injunctive Relief (the "Motion"), FDA's action to detain and regulate E-cigarette products exceeds its authority under the Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301 *et seq.*, and violates the notice and comment requirements of the Administrative Procedures Act ("APA"), 5 U.S.C. § 553.

### A. Electronic Cigarettes and NJOY's Business

E-cigarettes are products that look, feel and taste like traditional cigarettes and give smokers all the pleasure and satisfaction of traditional smoking, without the inconvenience and socio-cultural drawbacks of traditional cigarettes. E-cigarettes vaporize a liquid nicotine mixture – distilled from natural tobacco plants – which is inhaled in a manner similar to that of inhaling actual tobacco smoke. *See* Declaration of John Leadbeater filed contemporaneously herewith ("Leadbeater Decl."), ¶ 8. E-cigarettes are made up of three basic parts: the cartridge, the heating element or atomizer, and the battery and electronics. *Id.* The cartridge is a disposable

plastic container that contains 4 major ingredients: water, propylene glycol, nicotine and glycerol, and serves as the mouthpiece of the E-cigarette. The heating element vaporizes the naturally derived nicotine mixture that is ultimately inhaled by the user. The battery and electronics power the heating element and monitor air flow.

NJOY is a Nevada corporation that has imported E-cigarettes into the United States since February 2007. *See* Leadbeater Decl., ¶¶ 2-3. Virtually all of NJOY's revenues are derived from the importation of E-cigarettes into the United States. *Id.,* ¶ 4. NJOY has entered into binding contracts with its suppliers and distributors for the purchase and sale of these products. *Id.,* ¶ 5. Absent a reliable supply of E-cigarettes – NJOY's only business line – the Company's business would grind to a halt, the Company's viability would be gravely threatened, and NJOY would lose its hard-earned customer base. *Id.,* ¶¶ 6-7.

NJOY does not market or label its E-cigarettes for therapeutic uses – in particular, NJOY's marketing and labeling materials, including those on the products detained by the FDA, specifically state that the products are not smoking-cessation devices: "NJOY products are not smoking cessation products and have not been tested as such." *See* sample labeling materials, Exhibit A to Leadbeater Decl. Moreover, NJOY takes the following steps to ensure that the Company's E-cigarettes are sold and used just like traditional cigarettes and cigars: all E-cigarette products are sealed in tamper-proof shrink wrap; NJOY instructs retailers to follow the same age verification requirements applicable to sales of cigarettes and other tobacco products; and the display fixture for NJOY products is designed for placement behind the sales counter, accessible only to the clerk and not to customers. *See* Leadbetter Decl. at ¶ 10.

Prior to 2009, despite multiple inquiries from suppliers of E-cigarettes regarding the regulatory status of the product, the FDA gave no indication that it believed it had any authority

to regulate NJOY's E-cigarettes following *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S 120 (2000) ("*Brown and Williamson*"). NJOY has imported and sold its E-cigarettes in the United States for more than two years without any objection from the FDA.

**B. The FDA Reverses Course and Detains NJOY's Products**

Notwithstanding the holding of *Brown & Williamson*, FDA added E-cigarettes and their components to Import Alert 66-41 in 2009, directing the United States Customs and Border Protection ("USCBP") to reject and detain listed products at the port of entry.[2] On April 20, 2009, FDA detained a large shipment of NJOY's products including 6,000 starter kits, 6,000 electronic cigarettes, and 95,000 replacement cartridges at the port of Phoenix, Arizona.

FDA's Los Angeles District Office issued a "Notice of Action" in connection with the detention of NJOY's products, asserting among other things that E-cigarettes and their components were "unapproved new drugs." *See* Exhibit B to Leadbeater Decl. NJOY also understands that FDA has detained shipments of certain of its competitors, including the plaintiff in this case, SE, under the same purported authority. It is NJOY's understanding that FDA will continue to detain its shipments of E-cigarettes at the port of entry.

**ARGUMENT**

NJOY seeks by this Motion to intervene in this action to protect its business and avoid the crippling economic harm that will result from FDA's continued enforcement of its new policy. As set forth below, NJOY satisfies the requirements for intervention as of right pursuant to Fed. R. Civ. P. 24(a) because: (1) its motion is timely – NJOY brings this request to intervene 10 days after SE filed its suit, and no prejudice to FDA or SE will result from NJOY joining the suit at this time; (2) it has a direct and substantial interest in this litigation, because FDA's

2 Import Alert 66-41 can be found on FDA's Web site at http://www.fda.gov/ora/fiars/ora_import_ia6641.html

regulation of E-cigarettes applies to NJOY's own products and its detention of them at the port of entry directly impacts NJOY's business; (3) FDA's actions threaten NJOY's economic survival; and (4) NJOY's interests in this matter may not adequately be represented by its competitor, plaintiff SE. In the alternative, the Court should grant permissive intervention under Fed. R. Civ. P. 24(b), because NJOY's claims and request for a temporary restraining order share common questions of law and fact with those underlying SE's position and would not unduly delay the proceedings. Indeed, NJOY proposes to abide by the schedule already ordered by the Court.

## I. NJOY IS ENTITLED TO INTERVENE AS OF RIGHT

Federal Rule of Civil Procedure 24(a)(2) allows intervention as of right where the protection of an applicant's interest may be impaired if the lawsuit proceeds without the applicant. Rule 24(a)(2) of the Federal Rules of Civil Procedure provides, in pertinent part:

> On timely motion, the court must permit anyone to intervene who: … claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

The D.C. Circuit applies a four-part test to determine whether an applicant is entitled to intervene as of right: "(1) the timeliness of the motion; (2) whether the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) whether the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) whether the applicant's interest is adequately represented by existing parties."[3] *Fund for Animals*, 322 F.3d at 731 (D.C. Cir. 2003)

---

[3] In addition to satisfying the requirements delineated by Rule 24(a)(2), "a party seeking to intervene as of right must demonstrate that it has standing under Article III of the Constitution." *Fund for Animals*, 322 F.3d at 731-32 (D.C. Cir. 2003). NJOY satisfies the test for constitutional

(internal quotation marks and citations omitted). As explained below, NJOY's intervention satisfies all four Rule 24(a) requirements.

**A. NJOY's Motion to Intervene is Timely**

NJOY swiftly sought to intervene in this suit a mere 10 days after SE filed suit against FDA. Moreover, NJOY's participation will not prejudice any party or delay the resolution of the case.

Whether a motion to intervene is timely is determined on a case-by-case analysis that is left to the sound discretion of the trial court. *Sierra Club v. Van Antwerp*, 523 F. Supp.2d 5, 10 (D.D.C. 2007). In analogous cases, the Court of Appeals for the D.C. Circuit has held that intervention within "a few weeks" after the filing of the case and before the district court ruled on a preliminary injunction motion "cannot be regarded as untimely." *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1076 (D.C. Cir. 1998). Similarly, this Court has held that a motion to intervene filed within two months of notification of pending suit is timely. *Appleton v. FDA*, 310 F. Supp. 2d 194 (D.D.C. 2004); *Fund for Animals*, 322 F.3d at 731. In addition, as indicated above, NJOY seeks to intervene and join SE's pending motion for injunctive relief without any impact on the current schedule for briefing and hearing on that motion. Accordingly, NJOY's intervention at this initial stage of litigation is timely.

**B. NJOY Has a Substantial Interest in the Subject of this Litigation**

Rule 24(a)(2)'s requirement that a proposed intervenor as of right have a substantial

---

standing because FDA's reversal of its decision that regulation of cigarettes was beyond its authority, its issuance of an "import alert," and its request to Customs to detain an NJOY shipment have already caused NJOY to suffer injury-in-fact that intervention to proceed against FDA could redress. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (standing requires (1) "injury in fact," (2) "causal connection between the injury and the conduct complained of," and (3) the injury would be redressed by a ruling in the party's favor); *see also Fund for Animals,* 322 F.3d at 732-33.

interest in the subject matter of the existing case is "a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Cook v. Boorstin*, 763 F.2d 1462, 1466 (D.C. Cir. 1985) (internal quotation marks and citation omitted); *Huron Envtl. Activist League v. EPA,* 917 F. Supp. 34, 42 n.7 (D.D.C. 1996) (same). The D.C. Circuit and this Court therefore interpret this requirement liberally. *See*, *e.g.*, *Am. Horse Prot. Ass'n. v. Veneman,* 200 F.R.D. 153, 157 (D.D.C. 2001) (reviewing D.C. Circuit precedent on the "interest" element and concluding that the Circuit has adopted a "liberal and forgiving standard"); *Huron Envtl. Activist League*, 917 F. Supp. at 42 n.7 (D.D.C. 1996).

NJOY's claims here meet this standard. SE's requested relief makes plain that NJOY has a direct interest "relating to the property or transaction" affected by the disposition of the case. SE seeks a temporary restraining order and preliminary injunction enjoining FDA from enforcing import restrictions on E-cigarettes or E-cigarette components. As discussed *supra*, the import restrictions threaten to eliminate NJOY's sole business line and source of revenue. Likewise, the adjudication of SE's request for a declaratory judgment that FDA has no statutory authority to regulate E-cigarettes will bear directly on NJOY's business of importing and selling E-cigarettes, as FDA is seeking to assert regulatory jurisdiction over the product on which that business is based. Finally, SE's request for the release of any E-cigarettes currently detained or seized by the U.S. Government pursuant to FDA's unlawful declaration that it has jurisdiction over E-cigarettes impacts NJOY's physical property: Shipments of NJOY's E-cigarettes have been detained at the port of entry just as SE's products have.

As this Court has held, a company's interest in supporting its business model and protecting its survival as a business, and its rights to its shipments detained at the port of entry, are protectable property interests for purposes of the Rule 24(a)(2) analysis: "[t]he proposed

intervenor-defendant's interest in protecting his business is cognizable in that it is legally sufficient for involvement in the lawsuit, and would not hinder its disposition." *PETA v. Babbitt,* 151 F.R.D. 6, 8 (D.D.C. 1993). Here, "the [intervenor] applicant[] claim[s] an 'interest' in the litigation that is essentially the same as the interest claimed by the existing plaintiff: ...that the Final Rule being challenged will destroy their business model." *AmeriDream, Inc. v. Jackson,* 246 F.R.D. 37, 38 (D.D.C. 2007) (granting motion to intervene as of right). *See also Mova Pharm.,* 140 F.3d at 1074-75 (reversing denial of firm's request to intervene to "challenge a competitor's entry into its market"); *County of San Miguel v. MacDonald,* 244 F.R.D. 36, 44-46 (D.D.C. 2007) ("demonstrat[ion] that there is a real likelihood [intervenors] will sustain a direct injury" if the action is resolved unfavorably held sufficient to support intervention as of right).

**C. This Action Threatens NJOY's Ability to Protect its Interests**

NJOY need only show that an unfavorable disposition of the action "*may as a practical matter* impair or impede" its interest in the litigation. Fed. R. Civ. P. 24(a)(2) (emphasis added). The D.C. Circuit interprets this language to require a court to look at the "'practical consequences'" of denying intervention when evaluating an intervention request. *Fund for Animals*, 322 F.3d at 735 (quoting *Natural Res. Def. Council v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977)).

Here, an adverse result in this case would likely be binding on NJOY – a determination that FDA has regulatory jurisdiction over E-cigarettes would affect NJOY even if it were not participating in this suit by subjecting its products to FDA regulation and, potentially, to the crippling effects of an import ban. The D.C. Circuit has recognized that where, as here, the decision in an action would affect a proposed intervenor, that intervenor's interests may be impaired. *See Cook*, 763 F.2d at 1470 (holding that the potential *stare decisis* value of construction of the governing statute and relevant findings are a "substantial" interest of an

intervenor that could be impaired by the litigation). Moreover, because the disposition of this case could significantly affect the viability of NJOY's future business, NJOY must be permitted to participate in this case to protect its interest. *See, e.g., Fund for Animals*, 322 F.3d at 735 (holding that loss of revenues from an injunction satisfies the third prong of the Rule 24(a)(2) test).

### D. NJOY's Interests May Not Adequately Be Represented by SE

Finally, NJOY's interests in this proceeding may not adequately be represented by its competitor, plaintiff SE. A showing that existing representation is inadequate "is not onerous." *Hardin v. Jackson*, 600 F. Supp.2d 13, 16 (D.D.C. 2009); *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986). "The applicant need only show that representation of his interest 'may be' inadequate, not that representation will in fact be inadequate." *Hardin*, 600 F.Supp.2d at 16 (quotations omitted). "[P]etitioner[s] ordinarily should be allowed to intervene unless it is clear that the existing party will provide adequate representation for the absentee." *United States v. Amer. Tel. & Tel. Co.*, 642 F.2d 1285, 1293 (D.C. Cir. 1980) (quotations omitted).[4]

Here, SE may not adequately represent NJOY's interests because SE's economic interests relate solely to the set of products it sells, rather than to the electronic cigarette industry as a whole or to NJOY's products in particular. In litigating this issue, SE would not necessarily have an interest in protecting NJOY's business. As this Court has explained, even if the parties have "an extensive track record of cooperation," the mere fact that one party's interests are narrower or slightly different than another warrants a grant of intervention. *Atl. Sea Island Group LLC v. Connaughton*, 592 F.Supp.2d 1, 7 (D.D.C. 2008); *see also S. Utah Wilderness v.*

---

4 In fact, the D.C. Circuit has noted that some courts hold that opponents to intervention, rather than the proposed intervenor, bear the burden with respect to this factor. *Fund for Animals*, 322 F.3d at 736 n.7.

*Norton*, 2002 WL 32617198, at *5 (D.D.C. June 28, 2002) (because defendants represent the "broad public interest" they "will not adequately represent the specific interests or economic concerns of Yates Petroleum"); *County of San Miguel*, 244 F.R.D. at 48 (granting request to intervene, noting "although the FWS and the intervenor-applicants share a common interest – upholding the FWS's listing determination … even a shared general agreement does not necessarily ensure agreement in all particular respects." (quotations omitted)).

* * *

In sum, because NJOY has submitted a timely request to intervene, has a direct interest in litigation concerning FDA's approval status of its sole product, and has interests that may be impaired by this action and that may not adequately be represented by the existing plaintiff, its request to intervene "easily satisfies the requirements of [Federal Rule of Civil Procedure 24(a)(2)]." *Apotex, Inc. v. FDA*, 508 F. Supp. 2d 78, 80 n.2 (D.D.C. 2007). Accordingly, NJOY is entitled to intervene in this action as of right.

## II. ALTERNATIVELY, THIS COURT SHOULD GRANT PERMISSIVE INTERVENTION

While NJOY should be permitted to intervene as of right, NJOY additionally qualifies for permissive intervention under Federal Rule of Civil Procedure 24(b)(1)(B). The purpose of permissive intervention is "to provide a mechanism for intervention where the more stringent requirements of [intervention as of right] are not satisfied." *Cook v. Boorstin*, No. 82-0400, 1983 WL 329, at *5 (D.D.C. Oct. 4, 1983). Permissive intervention is permitted upon timely application where (i) an applicant "has a claim or defense that shares with the main action a common question of law or fact;" and (ii) the proposed intervention will not "unduly delay or

prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); *Butte County v. Hogen*, 2008 WL 2410407, at *2 (D.D.C. June 16, 2008).[5]

NJOY easily meets these requirements for permissive intervention. *First*, NJOY's claims and defenses share common questions of law and fact with the main action, namely, the propriety of FDA's assertion of regulatory jurisdiction over E-cigarettes, its issuance of an "import alert" resulting in detention of E-cigarette shipments, and its pursuit of a regulatory "process" not in accordance with requirements of the APA. "This requirement [for a common legal or factual question] is satisfied when '[t]he facts necessary to assert [the intervenor's] claim are essentially the same facts as those necessary to establish [an existing party's] claim.'" *Butte County,* 2008 WL 2410407, at *2 (*quoting MeWuk Indian Cmty. v. Kempthorne*, 246 F.R.D. 315, 320 (D.D.C. 2007)). That is the case here – the scope of FDA's authority to regulate E-cigarettes, and the propriety of its administrative actions under the APA, will be determined largely on common facts and legal principles.

*Second*, intervention at this early stage of the litigation will not unduly delay the proceedings. In fact, NJOY's desire to intervene is motivated in part by the desire to obtain the relief it requests quickly. NJOY is fully prepared to comply with the schedule set by this Court. Nor will SE or FDA suffer any prejudice to the adjudication of their rights. NJOY submits that to the contrary, the prospect of a fair and full adjudication would be enhanced by NJOY's participation.

---

5 Fed. R. Civ. P. 24(b)(2) also requires the proposed intervenor to establish that its request is timely, and that there exists an independent basis for subject matter jurisdiction. *Butte County,* 2008 WL 2410407, at *2. As noted herein, NJOY's request to intervene only 10 days after SE's filing of this action, without impact on the existing schedule, is timely. As stated in the proposed complaint submitted herewith, this Court has subject matter jurisdiction over Plaintiffs claims pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 2201, and 5 U.S.C. § 706.

## CONCLUSION

For the foregoing reasons, NJOY should be permitted to intervene in this action as of right pursuant to Federal Rule of Civil Procedure 24(a)(2). Alternatively, permissive intervention should be granted pursuant to Rule 24(b)(1)(B).

Dated: May 8, 2009

Respectfully submitted,

LATHAM & WATKINS LLP

By:______________________

David A. Becker (D.C. Bar No. 456396)
Philip J. Perry (D.C. Bar No. 434278)
John R. Manthei (D.C. Bar No. 447123)
*Pro hac vice* motion pending
Carolyne R. Hathaway (D.C. Bar No. 416066)
*Pro hac vice* motion pending
LATHAM & WATKINS LLP
555 11th Street, N.W. Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
E-mail: david.becker@lw.com

*Attorneys of Record for Proposed Intervenor-Plaintiff Sottera, Inc. d/b/a NJOY*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of May, 2009, I caused a true a correct copy of the foregoing Memorandum of Points and Authorities to be served via first-class mail, postage prepaid, upon the following:

Christopher Kip Schwartz
THOMPSON HINE LLP
1920 N Street, NW
Suite 800
Washington, DC 20036

Drake S. Cutini
DEPARTMENT OF JUSTICE
Office of Consumer Litigation
P.O. 386
Washington, DC 20044

David A. Becker
Latham & Watkins LLP