# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SMOKING EVERYWHERE, INC.
5600 NW 102nd Avenue, Suite A
Sunrise, Florida 33351

       Plaintiff,

and

Sottera, Inc., d/b/a/ NJOY
15455 N. Greenway-Hayden Loop Road
Scottsdale, Arizona 85260

       Proposed Intervenor-Plaintiff,

   vs.

U.S. FOOD AND DRUG ADMINISTRATION,
JOSHUA M. SHARFSTEIN, M.D.,
Acting Commissioner for Food and Drugs,
10903 New Hampshire Avenue
Silver Spring, Maryland 20903

and

U.S. DEPARTMENT OF HEALTH AND
HUMAN SERVICES,
KATHLEEN SEBELIUS, Secretary of the
Department of Health and Human Services
200 Independence Avenue, SW
Washington, D.C. 20201

       Defendants.

Civil Action No. 1:09-cv-00771 (RJL)

## VERIFIED INTERVENOR COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Sottera, Inc. d/b/a NJOY™ ("NJOY"), for its Complaint against the United States Food and Drug Administration, Joshua M. Sharfstein, M.D., Acting Commissioner for Food and Drugs, (collectively, "FDA"), and the United States Department of Health and Human Services, and Kathleen N. Sebelius, Secretary of the Department of Health and Human Services (collectively, "DHHS") hereby alleges as follows:

## Preliminary Statement

1.      Since 2007, NJOY has been importing and distributing electronic cigarettes and cigars ("E-cigarettes") in the United States.  E-cigarettes are battery powered products that allow adult users to inhale liquid nicotine vapor distilled from natural tobacco plants for the purpose of "smoking" pleasure without carbon monoxide, fire, flame, smoke, ash, stub, smell and other socially undesirable attributes of traditional cigarettes.  NJOY's E-cigarettes are marketed, labeled and sold for adult use as an alternative to conventional cigarettes for "smoking pleasure" – and not as a therapeutic product.

2.      FDA has no jurisdiction to regulate such products, as the Supreme Court determined in *Food & Drug Administration v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000).

3.      Nevertheless, in early 2009, FDA issued an import alert instructing FDA field offices and U.S. Customs and Border Protection ("CBP") to reject the admittance of E-cigarettes into the U.S (the "Import Alert").  FDA's import alert initiated a process resulting in the detention of E-cigarettes at U.S. ports of entry.  FDA issued "Notices of Action" in conjunction with these detentions reflecting FDA's apparent conclusion that E-cigarettes must be approved as a new drug, drug delivery device, or drug device combination pursuant to FDA's authority under the Federal Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301 *et seq*.

4.      On April 15, 2009, in reliance on FDA's Import Alert, CBP wrongfully refused entry into the U.S. and detained at Port of Entry 2605 in Phoenix, Arizona a shipment of NJOY's E-cigarettes.  Under FDA's Import Alert, it appears that future shipments will also be unlawfully refused entry.  The FDA implemented this process without first issuing any warning to NJOY, promulgating any regulation, issuing any guidance or taking other public action to explain or justify this new policy.  FDA's actions threaten to eliminate the availability of NJOY's sole product, and threaten to destroy NJOY's business.  NJOY has attempted to address this issue with FDA multiple times since April 15, 2009, but has received no substantive response.

5.      This is an action for declaratory and injunctive relief pursuant to 28 U.S.C. § 2201 and 5 U.S.C. § 702 *et seq.* to enjoin FDA from improperly exceeding its delegated authority by attempting to regulate E-cigarettes.  FDA's conduct exceeds its authority under the FDCA, and by failing to engage in mandatory public notice and opportunity for comment, FDA's conduct further violates the notice and comment procedures codified at 5 U.S.C. § 553.

### Parties

6.      Plaintiff Sottera, Inc. is a Nevada corporation with its principal place of business located at 15455 North Greenway Hayden Loop Road, Scottsdale, Arizona 85260.  Sottera Inc. does business under the trade name NJOY.  Sottera, Inc. imports and distributes e-cigarettes and e-cigarette accessories under the registered trademark NJOY™.  Sottera, Inc. is referred to herein as "NJOY."

7.      Defendant United States Food and Drug Administration is a division of Defendant Department of Health and Human Services.  FDA has responsibility, *inter alia*, for ensuring that certain defined drugs and medical devices sold within the United States are safe and effective. The headquarters and principal place of business of the FDA is 10903 New Hampshire Avenue,

Silver Spring, Maryland 20903.  The headquarters and principal place of business of Defendant

DHHS is at 200 Independence Avenue, SW, Washington, D.C. 20201.

8.      Defendant Joshua M. Sharfstein was appointed acting Commissioner of the FDA

by President Obama.  In that role Dr. Sharfstein heads FDA and reports to the Secretary of

DHHS.

9.      Defendant Kathleen Sebelius has served as Secretary of DHHS since April 28,

2009.  In that role she is the head of DHHS.

### Jurisdiction and Venue

10.      This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28

U.S.C. § 1331, 28 U.S.C. § 2201, and 5 U.S.C. § 706.

11.      This Court has personal jurisdiction over Defendants FDA, DHHS, and Acting

Commissioner Joshua Sharfstein, and Secretary Kathleen Sebelius in their official capacities, as

each is an agency or official of the United States Government.

12.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because Defendant

DHHS resides within the district of Washington, D.C.

### Statement of Facts

#### *NJOY and E-cigarettes*

13.      NJOY is a Nevada corporation that markets and imports electronic smoking

devices.  NJOY invested millions of dollars to bring E-cigarettes to market in the United States.

Since it began selling E-cigarettes in early 2007, NJOY has sold at least 135,000 units in the U.S.

The centerpieces of the NJOY product line are three different styles of rechargeable, battery-

powered microelectronic alternative smoking products that, when used in conjunction with

replaceable nicotine cartridges of different flavors and nicotine strengths, mimic with remarkable

accuracy the process and pleasures of smoking.

14.     E-cigarettes function by vaporizing a liquid nicotine mixture that, in the case of NJOY's product, is distilled from natural tobacco plants.  Once the nicotine mixture is vaporized, the user may inhale the nicotine vapor in a manner similar to that of inhaling actual tobacco smoke, but without the fire, flame, carbon monoxide, ash, stub, smell, and inconvenience associated with traditional cigarettes.

15.     E-cigarettes are made up of three basic parts: the nicotine cartridge, the heating element or atomizer, and the battery and electronics.  The cartridge is a disposable plastic container that contains four major ingredients:  water, propylene glycol, nicotine and glycerol, and serves as the mouthpiece of the E-cigarette.  The heating element vaporizes the naturally-derived nicotine mixture to form the vapor that is inhaled by the user.  Finally, the battery and electronics power the heating element and monitor air flow.  Each of the parts of an E-cigarette is designed to look like an actual cigarette; the E-cigarette is functionally equivalent to a traditional smoking experience.

16.     When a user inhales on an E-cigarette, the air flow is detected by the device's electronics and activates the heating element within the E-cigarette.  When the heating element is activated, the natural liquid nicotine mixture is vaporized, and the user inhales the nicotine vapor.  The vapor contains a flavoring designed to simulate the flavor and feel of tobacco smoke, but no flame, combustion, smoke, or ash is produced by the use of an E-cigarette.

17.     NJOY does not market its E-cigarettes for any therapeutic purpose, as a smoking cessation aid, or otherwise in a manner that could invoke FDA jurisdiction.  Instead, E-cigarettes are intended to be simply another more socially acceptable option for experiencing the pleasures of smoking, and NJOY markets them as such.  NJOY takes the following steps to ensure that the company's E-cigarettes are sold and used like traditional cigarettes and cigars:  all E-cigarette

products are sealed in tamper-proof shrink wrap; NJOY instructs retailers to follow the same age verification requirements used in effectuating sales of other tobacco products; and the display fixture for NJOY products is designed for placement behind the sales counter, accessible only to the clerk and not to customers.

18.     NJOY imports one hundred percent of its supply of E-cigarettes from overseas manufacturers, and, upon information and belief, there is no domestic manufacturer of E-cigarettes or their component parts.  Virtually all of NJOY's revenues are derived from the importation and distribution of E-cigarettes in the United States, and if NJOY could not obtain a reliable supply of E-cigarettes — its only product line — its viability as a business would be gravely threatened.

19.     As part of its distribution network, NJOY has binding contracts with overseas suppliers and manufacturers of E-cigarettes.  Additionally, NJOY has entered into contracts with numerous independent distributors of E-cigarettes.  These distributors sell E-cigarettes at physical storefronts throughout the United States.

### *The FDA Lacks Jurisdiction to Regulate E-Cigarettes*

20.     Throughout most of FDA's history and until 1995, the Agency has explicitly and repeatedly disclaimed the authority and jurisdiction to regulate tobacco products as nicotine delivery mechanisms.  During this time period, Congress, on several occasions, debated whether to extend FDA's jurisdiction to include such products.  Each time, however, Congress determined that FDA should not have jurisdiction over tobacco products.

21.     In or around 1995, FDA reversed its long-standing policy, and asserted that it had jurisdiction to regulate cigarettes and tobacco products as nicotine delivery devices.  At that time, FDA proposed and adopted binding regulations relating to the marketing and sale of cigarettes and tobacco products.

22.     In 2000, the Supreme Court of the United States, in *Food & Drug Administration v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000), held that "[i]t is therefore clear, based on the FDCA's overall regulatory scheme and the subsequent tobacco legislation, that Congress has directly spoken to the question at issue and precluded the FDA from regulating tobacco products."

### *The FDA Attempts To Assert Jurisdiction Over E-cigarettes*

23.     Beginning in late 2005, NJOY and other suppliers of E-cigarettes made multiple contacts with FDA to ensure that they could legally sell E-cigarettes.  During these conversations, FDA never indicated that it had jurisdiction to regulate NJOY's products.  In February 2007, NJOY began importing E-cigarettes and E-cigarette accessories into the United States.

24.     In or around early 2009, FDA added E-cigarettes to Import Alert 66-41, which, *inter alia*, directed the CBP to reject the entry of "Electronic Cigarettes and Electronic Cigarette Components" into the United States and detain them without physical examination.  An import alert is a mechanism through which FDA advises CBP field offices of potential issues relating to particular imported products.  In Import Alert 66-41, FDA stated that that E-cigarettes were unapproved drugs and/or misbranded drugs.  The Import Alert has the effect of a substantive, binding regulation.

25.     FDA added E-cigarettes to Import Alert 66-41 without seeking any public comment or input, without publishing its proposed action in the Federal Register, and without notifying NJOY or others in the industry.

26.   At no time before FDA added E-cigarettes to Import Alert 66-41 was NJOY offered the opportunity to participate in any FDA policy or rulemaking process or to submit its written views or make oral arguments before FDA.

27.   Following FDA's decision to add E-cigarettes to Import Alert 66-41, a large overseas shipment of NJOY's products was denied entry into the United States on April 15, 2009.  On April 20, 2009, FDA sent NJOY a "Notice of FDA Action" attached hereto as Exhibit Exhibit B.

28.   The Notice of Action stated that FDA detained NJOY's E-cigarette products because the "products and their component parts appear to be intended to both affect the structure or function of the body, and to prevent, mitigate, or treat the withdrawal symptoms of nicotine addiction."  FDA took this position even though NJOY's products and marketing materials explicitly state that E-cigarettes are "not a smoking cessation product," and the actual NJOY products that FDA detained contain a statement on the labeling disclaiming their use as an aid to smoking cessation.  NJOY's packaging and labeling includes the following statements and disclaimers, among others:

- "NJOY products are intended for use by those of legal smoking age and older, not by nonsmokers or by children, pregnant women, women breastfeeding, or persons with or at risk of heart disease, high blood pressure, diabetes, or taking medicine for depression or asthma"; and

- "NJOY products are not a smoking cessation product and have not been tested as such."

*See* sample of NJOY's product labeling, attached hereto as Exhibit A.  As the 4th Circuit explained in *Brown & Williamson Tobacco Corp. v. FDA*, "no court has ever found that a product is intended for use or intended to affect within the meaning of the Act absent manufacturer claims as to that product's use."  153 F.3d 155, 163 (4th Cir. 1998) (internal citations and quotations omitted).

8

29.     Upon information and belief, FDA will continue to order that all overseas shipments of E-cigarettes be denied entry into the United States until such time that E-cigarettes have been approved by FDA as a new drug within the meaning of section 201 of the FDCA.

30.     FDA has now held NJOY's products for over three weeks.  Through its attorneys, NJOY has made (and continues to make) multiple efforts to address this issue with FDA.  FDA has not informed NJOY when it will decide whether to remove the import restrictions on NJOY's products – although FDA's recent actions indicate that the agency has made a final determination that it has jurisdiction over E-cigarettes, contrary to *Food & Drug Administration v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000).

31.     FDA's new policy and classification of E-cigarettes threatens the continued viability of NJOY, which receives virtually all of its revenue from the distribution and sale of imported E-cigarettes.  The FDA's un-promulgated policy is causing immediate harm not only to NJOY's business, but also its contracts with its suppliers and distributors.  Without the ability to import E-cigarettes, NJOY cannot sell or distribute any of its products in the United States, thereby causing a massive loss in revenues and threatening to destroy NJOY's business.

32.     Other than review in this Court, no sufficient avenue for redress exists for NJOY to prevent the imminent irreparable harm resulting from the Import Alert.  Without judicial intervention, FDA will apparently continue to assert unauthorized control over NJOY and, indeed the entire E-cigarette industry, by improperly characterizing its products as smoking cessation products, and/or "drugs" or "drug delivery devices," or "drug-device combinations."

33.     NJOY seeks a preliminary injunction and permanent injunction prohibiting FDA from enforcing Import Alert 66-41 with respect to NJOY E-cigarettes and from taking any other action to regulate NJOY E-cigarettes.  NJOY also requests the issuance of a declaratory

judgment that FDA's conduct in regulating or attempting to regulate E-cigarettes is invalid and unlawful.

## COUNT I
### *(The FDA Assertion of Jurisdiction Over E-cigarettes is Ultra Vires)*

34.     NJOY incorporates paragraphs 1-33 above by reference as if fully set forth herein.

35.     FDA has no authority under the FDCA or any other relevant statute or regulation to assert jurisdiction over E-cigarettes because Congress and the United States Supreme Court have expressly prohibited the Agency from regulating tobacco products marketed for smoking pleasure without therapeutic claims.  The Supreme Court determined that the delivery and use of nicotine through tobacco products is beyond the scope of FDA's authority under the FDCA.

36.     FDA has no authority under the FDCA or any other relevant statute or regulation with respect to E-cigarettes because E-cigarettes are not "drugs," "drug delivery systems," or "drug device combinations" under 21 U.S.C. § 321(g).

37.     Indeed, NJOY's products are not labeled or marketed for any therapeutic purpose or to provide any other medical benefit.  Rather, they are marketed as an alternative to traditional cigarettes to provide the user the same pleasures of smoking.

38.     FDA's action in asserting jurisdiction over E-cigarettes is therefore "in excess of statutory jurisdiction, authority, or limitations of statutory right," and is further contrary to the public interest.  5 U.S.C. § 706(2)(C).  FDA's assertion of authority is unlawful, and any regulations or policies stemming from its unlawful conduct must be set aside in accordance with Section 706(2) of the Administrative Procedures Act ("APA").  5 U.S.C. § 706(2).

39.     Additionally, any FDA enforcement resulting from its declaration of jurisdiction over E-cigarettes should be preliminarily enjoined pending judicial review of such actions pursuant to Section 705 of the APA.

40.     As a direct and proximate result of FDA's unlawful acts, NJOY has been seriously injured and faces irreparable harm as alleged in this Complaint, in that its shipment of E-cigarettes was rejected and seized on April 15, 2009, and that FDA's improperly promulgated policy will greatly disrupt NJOY's U.S. operations.

## COUNT II
### *(Failure to Comply with the Administrative Procedures Act)*

41.     NJOY incorporates paragraphs 1-40 above by reference as if fully set forth herein.

42.     As a federal agency, FDA is required to follow and apply all laws, rules, and regulations in a uniform manner and in such a way as to provide for due process for citizens of the United States.

43.     FDA is charged by Congress with enforcing the FDCA and several other public health laws.  Congress has permitted FDA to implement and apply the FDCA through the lawfully promulgated regulations of the Code of Federal Regulations.  Any final rule or regulation issued by an administrative agency that affects a substantive change in the law must be adopted pursuant to the required notice and comment procedures of the APA.  5 U.S.C. § 553 *et seq*.

44.     Import Alert 66-41, which, *inter alia*, directed the CBP to reject the entry of "Electronic Cigarettes and Electronic Cigarette Components," is effectively a binding, substantive rule that imposes obligations on other parties and significantly affects the interests of NJOY and others in the electronic cigarette industry.

45.     FDA did not provide opportunity for notice and comment pursuant to the APA before classifying E-cigarettes as a new drug, a drug delivery device, or a drug-device combination.  FDA neither published notice of the new rule in the Federal Register nor served personal notice on the parties affected by the un-promulgated rule.

46.     FDA's failure to comply with the procedures required by law is a violation of Section 706 of the APA and thus renders its actions unlawful.

47.     In addition, FDA has not established a rational nexus between the addition of E-cigarettes to Import Alert 66-41 and the Congressional mandate empowering the FDA to ensure that medical devices and medical products sold within the United States are safe and effective.

48.     FDA has had a custom and practice of not interfering with the importation of E-cigarettes and other tobacco products that are outside of FDA's jurisdiction.  With its addition of E-cigarettes to Import Alert 66-41, FDA has departed from precedent without cause, good reason, and notice.

49.     FDA's addition of E-cigarettes to Import Alert 66-41 is an "arbitrary" and "capricious" agency action because it departs from precedent without benefit of notice, public hearing, and good cause.

50.     FDA's addition of E-cigarettes to Import Alert 66-41 is an "arbitrary" and "capricious" agency action because it seeks to treat the non-therapeutic use of nicotine in electronic cigarettes differently than its use in traditional tobacco products.

51.     This conduct by FDA is ongoing and immediate.  As a result of the ongoing conduct of FDA, NJOY has been harmed and is being harmed in that: (a) NJOY receives virtually all of its revenue from imported E-cigarettes, and NJOY has no available domestic manufacturers; (b) NJOY will lose the ability to fulfill its outstanding obligations and contracts with its suppliers and distributors; (c) Import Alert 66-41 threatens the ongoing viability of NJOY; and (d) the inability to import E-cigarettes will lead to NJOY having to terminate its distributors and/or dismiss employees whose work relates to the retail sale and distribution of these products.

52.     As a direct and proximate result of FDA's unlawful acts, NJOY has been seriously injured and faces irreparable harm as alleged in this Complaint.

53.     Consequently, FDA's issuance and enforcement of Import Alert 66-41 must be enjoined pursuant to 5 U.S.C. § 706(2)(A) and (D).

**COUNT III**
*(Declaratory Judgment)*

54.     NJOY incorporates paragraphs 1-53 above by reference as if fully set forth herein.

55.     Defendants' actions are in violation of federal statute and regulations.

56.     NJOY is experiencing harm from Defendants' illegal actions.

57.     This conduct by FDA is ongoing and immediate.  As a result of the ongoing conduct of FDA, NJOY has been harmed and is being harmed in that: (a) NJOY receives virtually all of its revenue from imported E-cigarettes, and NJOY has no available domestic manufacturers; (b) NJOY will lose the ability to fulfill its outstanding obligations and contracts with its suppliers and distributors; (c) Import Alert 66-41 threatens the ongoing viability of NJOY; and (d) the inability to import E-cigarettes will lead to NJOY having to terminate its distributors and/or dismiss employees whose work relates to the retail and distribution of these products.

58.     NJOY requests the Court to: (1) declare that the actions of FDA as set forth in this Complaint are contrary to the language of the law, are contrary to binding precedent of the Supreme Court of the United States, are arbitrary and capricious in their application, and are *ultra vires*; (2) enter judgment in favor of NJOY; and (3) enjoin and prohibit FDA from enforcing Import Alert 66-41 with respect to E-cigarettes, detaining E-cigarettes, or otherwise preventing the entry of E-cigarettes into the United States and from taking any other action to regulate E-cigarettes.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A.      Enter a preliminary injunction, pending a decision on the merits, that enjoins Defendants from detaining E-cigarettes, and from enforcing Import Alert 66-41 with respect to E-cigarettes and E-cigarette component parts;

B.      Upon hearing the merits, enter a declaratory judgment that Defendants are without statutory authority to regulate E-cigarettes under the FDCA and that the addition of E-cigarettes to Import Alert 66-41 is invalid, unlawful, and *ultra vires* of Defendants' authority, and further enter a permanent injunction prohibiting Defendants from regulating E-cigarettes or E-cigarette component parts, or, in the alternative, enter a permanent injunction that prohibits Defendants from regulating E-cigarettes unless and until such time that Defendants undergo the required procedures pursuant to the APA;

C.      Order the release of any E-cigarettes currently detained or seized by the United States Government pursuant to FDA's unlawful declaration that it has jurisdiction over E-cigarettes;

D.      Award NJOY its costs and expenses, including reasonable attorneys' fees; and

E.      Award such further and additional relief as is just and proper.

Dated:  May 8, 2009                          Respectfully submitted,

                                             LATHAM & WATKINS LLP

                                             By: _____
                                             David A. Becker (D.C. Bar No. 456396)
                                             Philip J. Perry (D.C. Bar No. 434278)
                                             John R. Manthei (D.C. Bar No. 447123)
                                                   *Pro hac vice* motion pending
                                             Carolyne R. Hathaway (D.C. Bar No. 416066)
                                                   *Pro hac vice* motion pending
                                             LATHAM & WATKINS LLP
                                             555 11th Street, N.W. Suite 1000
                                             Washington, D.C. 20004
                                             Telephone: (202) 637-2200
                                             Facsimile: (202) 637-2201
                                             E-mail: david.becker@lw.com

                                             *Attorneys of Record for Proposed Intervenor-*
                                             *Plaintiff Sottera, Inc. d/b/a NJOY*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SMOKING EVERYWHERE, INC.
5600 NW 102nd Avenue, Suite A
Sunrise, Florida 33351

    Plaintiff,

and

Sottera, Inc., d/b/a/ NJOY
15455 N. Greenway-Hayden Loop Road
Scottsdale, Arizona 85260

    Proposed Intervenor-Plaintiff,

  vs.

U.S. FOOD AND DRUG ADMINISTRATION,
JOSHUA M. SHARFSTEIN, M.D.,
Acting Commissioner for Food and Drugs,
10903 New Hampshire Avenue
Silver Spring, Maryland 20903

and

U.S. DEPARTMENT OF HEALTH AND
HUMAN SERVICES,
KATHLEEN SEBELIUS, Secretary of the
 Department of Health and Human Services
200 Independence Avenue, SW
Washington, D.C. 20201
    Defendants.

Civil Action No.
 1:09-CV-00771 (RJL)

**VERIFICATION OF JOHN
LEADBEATER OF
VERIFIED INTERVENOR
COMPLAINT FOR
DECLARATORY
AND INJUNCTIVE
RELIEF**

## <u>VERIFICATION</u>

On this 10th day of May, 2009, I, John Leadbeater, declare and verify that I am the

President and Chief Executive Officer of Sottera, Inc., d/b/a NJOY™, proposed intervenor-

plaintiff in the above-captioned action, and that I have read the foregoing Complaint For

Declaratory and Injunctive Relief and that I know the contents thereof.

I declare under penalty of perjury that the contents of the foregoing document are true and correct.

John Leadbeater
Sottera, Inc., d/b/a NJOY™

# **<u>EXHIBIT A</u>**



# **EXHIBIT B**

*Aida*

# United States Food and Drug Administration
### Los Angeles District Office
## Notice of FDA Action

Entry Number:     XXX-0161838-9

Notice Number:    2
April 20, 2009

Filer:
Acb Import Services, Inc                    Attention:     Arizona Customs [
2153 E. Jones Ave
Phoenix, AZ  85040

---

Port of Entry:    2605, Phoenix, AZ
Carrier:          AIR CANADA; 574-0236213-1          *25 2275*
Date Received:    April 15, 2009
Arrival Date:

Importer of Record: Sottera Inc, Scottsdale, AZ  85260
Consignee:        Sottera Inc, Scottsdale, AZ  85260-1886

---

## HOLD DESIGNATED

### Summary of Current Status of Individual Lines

Document:     1  Invoice: 20090403

| Line ACS/FDA | Product Description | Quantity | Current Status |
|---|---|---|---|
| ---/001 | ELECTRONIC CIGARETTES | 6000 PCS | Line Split |
| * ---/001A | ELECTRONIC CIGARETTE NPRO Starter Kits | 6000 PCS | Detained 04-20-2009 |
| * ---/001B | ELECTRONIC CIGARETTE Replacement Cartridges | 95000 PCS | Detained 04-20-2009 |

\* = Status change since the previous notice.  Read carefully the sections which follow for important information regarding these lines.

@ = Consignee ID

FDA will not request redelivery for examination or sampling, if the products not released by FDA are moved, following USCS conditional release to a location within the local metropolitan area or to a location approved by the FDA office at the number below.

All products in this entry not listed above may proceed without FDA examination.  This notice does not constitute assurance the products involved comply with provisions of the Food, Drug, and Cosmetic Act or other related acts, and does not preclude action should the products later be found violative.

---

## DETENTION

The following products are subject to refusal pursuant to the Federal Food Drug and Cosmetic Act (FD&CA),

Notice of FDA Action                                                    Notice Number  2
Entry Number: XXX-0161838-9                                             Page: 2

Public Health Service Act (PHSA),or other related acts in that they appear to be adulterated, misbranded or
otherwise in violation as indicated below:

| Line ACS/FDA | Product Description | Respond By |
|---|---|---|
| ---/001A | ELECTRONIC CIGARETTE NPRO Starter Kits | May 8, 2009 |

FD&CA Section 502(o), 801(a)(3); MISBRANDING
It appears the device is subject to listing under 510(j) and the initial distributor has not registered as required by
21 CFR 807.20 (a)(4).

FD&CA Section 502(o), 801(a)(3); MISBRANDING
It appears the drug or device is not included in a list required by Section 510(j), or a notice or other information
respecting it was not provided as required by section 510(j) or 510(k). These products and their component
parts appear to be intended to both affect the structure or function of the body, and to prevent, mitigate, or treat
the withdrawal symptoms of nicotine addiction.

FD&CA Section 505(a), 801(a)(3); UNAPPROVED NEW DRUG
The article appears to be a new drug without an approved new drug application. These products and their
component parts appear to be intended to both affect the structure or function of the body, and to prevent,
mitigate, or treat the withdrawal symptoms of nicotine addiction.

FD&CA Section 801(a)(3); 502(o) Misbranding
It appears that a notice or other information respecting the device was not provided to FDA, as required by
Section 510(k) and the device was not found to be substantially equivalent to a predicate device. These
products and their component parts appear to be intended to both affect the structure or function of the body,
and to prevent, mitigate, or treat the withdrawal symptoms of nicotine addiction.

| ---/001B | ELECTRONIC CIGARETTE Replacement Cartridges | May 8, 2009 |

FD&CA Section 502(o), 801(a)(3); MISBRANDING
It appears the device is subject to listing under 510(j) and the initial distributor has not registered as required by
21 CFR 807.20 (a)(4).

FD&CA Section 502(o), 801(a)(3); MISBRANDING
It appears the drug or device is not included in a list required by Section 510(j), or a notice or other information
respecting it was not provided as required by section 510(j) or 510(k). These products and their component
parts appear to be intended to both affect the structure or function of the body, and to prevent, mitigate, or treat
the withdrawal symptoms of nicotine addiction.

FD&CA Section 505(a), 801(a)(3); UNAPPROVED NEW DRUG
The article appears to be a new drug without an approved new drug application. These products and their
component parts appear to be intended to both affect the structure or function of the body, and to prevent,
mitigate, or treat the withdrawal symptoms of nicotine addiction.

FD&CA Section 801(a)(3); 502(o) Misbranding
It appears that a notice or other information respecting the device was not provided to FDA, as required by
Section 510(k) and the device was not found to be substantially equivalent to a predicate device. These
products and their component parts appear to be intended to both affect the structure or function of the body,
and to prevent, mitigate, or treat the withdrawal symptoms of nicotine addiction.

Please direct your response to:

Ruben Delagarza, Compliance Officer          (310) 971-2287
(Region/District)                            (310) 971-2363 (FAX)
U.S. Food and Drug Administration            RUBEN.DELAGARZA@FDA.HHS.GOV
222 W. 8th St., Suite 700

APR.23.2009  11:42AM    AZ CUSTOM BROKERS                          NO.740    P.4/4

Notice of FDA Action                                    Notice Number  2
Entry Number: XXX-0161838-9                             Page:  3

   San Pedro, CA 90731

You have the right to provide oral or written testimony, to the Food & Drug Administration, regarding the admissibility of the article(s) or the manner in which the article(s) can be brought into compliance. This testimony must be provided to FDA on or before the dates shown above.

Notice Prepared For: The District Director, U.S. Food and Drug Administration
Notice Prepared By:  AT

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of May, 2009, I caused a true a correct copy of the

foregoing Verified Intervenor Complaint for Declaratory and Injunctive Relief to be served via

first-class mail, postage prepaid, upon the following:

Christopher Kip Schwartz
THOMPSON HINE LLP
1920 N Street, NW
Suite 800
Washington, DC 20036

Drake S. Cutini
DEPARTMENT OF JUSTICE
Office of Consumer Litigation
P.O. 386
Washington, DC 20044

David A. Becker
Latham & Watkins LLP